457 So.2d 141 (1984)
STATE of Louisiana in the Interest of D.L.
No. 16442-CAJ.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1984.
*142 Nancy F. Gilliland, Monroe, for defendant-appellant.
Richard Ducote, New Orleans, for plaintiff-appellee, Department of Health and Human Resources.
Jay Nolen and Lee Ineichen, Monroe, curators ad hoc for absent father.
Before HALL, MARVIN and NORRIS, JJ.
HALL, Judge.
The mother of an 11-year-old boy appeals the judgment of the Monroe City Court, acting in its capacity as a juvenile court, decreeing her child abandoned and terminating her parental rights. The issues presented are whether the city court judge was correct in overruling a timely exception of improper venue, and whether the city court judge was correct in finding the Department of Health and Human Resources (DHHR) carried its burden of showing the child to be abandoned. We affirm the judgment of the juvenile court.
Factual Background
Appellant was born in Mississippi and grew up in foster care in East Carroll Parish. While still in foster care, she became pregnant at age 17. Because she had a spot on her lung requiring surgery, she was sent to New Orleans where she both delivered her child and had surgery on her lung. Her child, a son, was born on December 27, 1972, and was taken into the protective custody of the Monroe City Court in Ouachita Parish, as evidenced by an order granting temporary custody issued on January 10, 1973. In that order, the court placed the child in the custody of the Louisiana Department of Public Welfare (now DHHR), which in turn placed the boy in a foster home in the town of Tallulah in Madison Parish.
*143 Appellant, after her release from the hospital, was placed in a foster home in New Orleans to recuperate more fully. She was released from foster care in 1974 at age 19, and found employment in New Orleans. Although she made occasional trips to see her son between 1974 and 1981, she apparently has had no contact with him since 1981.
On October 18, 1983, the state filed a petition of abandonment, and the matter was set for hearing in Monroe City Court on January 24, 1984. An attorney was appointed to represent the appellant, and the attorney was eventually able to locate and contact the appellant. The hearing was continued due to appellant's inability to attend, and was later heard on February 14, 1984. Prior to the original hearing date, appellant filed an exception of improper venue which was denied. Appellant again raised this exception before the judge presiding over the February 14 hearing; the exception was again denied. The court ruled that appellant abandoned her child and she appealed.
Issue No. 1Venue
Appellant contends the city court judge erred in overruling a timely exception to improper venue because the record indicates that appellant lived in East Carroll Parish prior to 1972 and in Orleans Parish since 1972, and that her child lived in Madison Parish since shortly after his birth in 1972. DHHR contends that venue was proper because the city court had continuing jurisdiction from its original exercise of jurisdiction in January 1973.
LSA-R.S. 9:403 B. provides that an abandonment proceeding be initiated by an affidavit made before the judge or clerk of "the juvenile court having jurisdiction over the child...." In this case, the Monroe City Court sitting as a juvenile court had continuing jurisdiction over the child by virtue of the proceedings brought in that court in 1973 under former LSA-R.S. 13:1570 C., wherein the court awarded custody of the child to the Louisiana Department of Public Welfare on the petition and affidavit of a welfare case supervisor that the mother wished to relinquish custody for the purpose of enabling the child to receive adequate care. In spite of irregularities in the earlier proceeding, the court having exercised jurisdiction under the statute and the mother having acquiesced in the original temporary custody award for more than a decade, the court's exclusive jurisdiction over the custody of the child continued and it is the proper court, or proper venue, for the subsequent abandonment proceeding. Medus v. Medus, 410 So.2d 1261 (La.App. 3d Cir.1982).
Issue No. 2Abandonment
The relevant statute for determining when a child should be considered abandoned in LSA-R.S. 9:403, which in pertinent part provides:
"A. A child shall be considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove ...
"(1)(b) The parent or parents have failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility.
"(2) The introduction of clear and convincing evidence which establishes the facts required by Subparagraphs (1)(a) or (1)(b) of this Subsection shall create a presumption that the parent or parents intended to permanently avoid parental responsibilities. The child shall be declared abandoned unless the parent or parents present evidence that rebuts the presumption. A parent adjudged to have abandoned his child under Subparagraphs (1)(a) or (1)(b) shall thereafter have no right to object to or oppose any proceeding to adopt that child...."
"C. In the event the facts constituting abandonment are proved by clear and convincing evidence to the satisfaction of the court, the court shall decree the child to be an abandoned child and may place the child in the custody of an agency, a person or persons, or may make any *144 other disposition of the child that is in the best interest of the child."
This statute's legislative history indicates that the present version of the statute, which was last amended in 1980, imposes a somewhat lighter burden upon the state than was imposed by the previous version. However, as we stated in State in Interest of T.M., 440 So.2d 951 (La.App. 2d Cir. 1983):
"We continue to adhere to the basic principle that a decree of abandonment which irrevocably breaks one of the closest and most fundamental relationships must be predicated upon evidence of circumstances clearly manifesting the parent's intention to permanently avoid parental responsibility."
Despite our continuing adherence to this basic principle, we find the city court judge was not manifestly erroneous in declaring the child abandoned in the present case.
The mother admitted she had not seen her son since 1981; the record indicates their last visit was in September of that year. Thus, at the time of the abandonment proceedings, nearly two and one-half years had elapsed without the child's seeing his mother. Over the prior eight years the mother had apparently averaged about one visit per year with her child. The mother further admitted she had not sent her son any birthday or Christmas presents. The record also contains a written agreement between the mother and the New Orleans Office of Human Development, signed by the mother on March 24, 1981. In this agreement, initiated by the state agency, the mother expressed a willingness to work over a one-month period toward the goal of regaining custody of her son by meeting weekly with a case worker, visiting her son on a regular basis, and paying some child support. After signing this agreement, the mother neither made support payments, nor met regularly with the case worker. The agency's next reported contact with the mother was in December 1983 when another worker eventually succeeded in locating her by contacting her foster mother in East Carroll Parish. However, the mother apparently did contact the agency around September 1981, since her last visit with her child was probably set up through that agency.
Appellant testified that shortly after making the agreement mentioned above, she fell upon hard times. She claims she lost her son's address in a fire, that on another occasion she was the victim of a flood, and that she found her income insufficient to make frequent trips to see her son. However, appellant admitted on cross-examination that she knew her foster mother and her son's foster mother were friends, and that she never tried to get her son's number by contacting her own foster mother. Her misfortunes and low income do not excuse her failure to contact her son for such a long period of time, or to send him even token gifts or support. Furthermore, the fact that she did so little to cooperate with the New Orleans agency with whom she made the written agreement, belies any real interest in actively pursuing a course of action to regain her son's custody and assume parental responsibility. Neither money nor distance prevented her working with an agency in her own city.
The facts above distinguish the present case from those cases cited by appellant in which abandonment was not found. Perhaps the cited case most factually similar to the case at hand is In Interest of Shumaker, 341 So.2d 583 (La.App. 2d Cir. 1977). In that case Mrs. Shumaker failed to see her daughter for nearly two years prior to an abandonment proceeding and had seemed to show little concern for her over the preceding 15 months. Like the mother in this case Mrs. Shumaker blamed her apparent lack of concern on various misfortunes. She testified that she lost her job and was unable to continue making weekly payments, that she was involved in litigation in another state trying to regain custody of two of her other children, that her present husband was out of work and they were financially unable to travel from Georgia to Shreveport to visit the daughter, and that the agency was uncooperative *145 and did not want her to get her daughter back. In contrast, the mother in the present case never attempted to make any payments to support her son, even though she had been able to find employment. She testified that she was employed at a restaurant for the nine months prior to the hearing, and that she was clearing about $120 per week. She admitted that she could have afforded to send Christmas presents to her child, but did not do so. She also testified on direct that she felt the welfare and DHHR workers had cooperated with her in trying to get her child back, although she felt they could have helped her secure low-income housing. These facts indicate appellant's circumstances were not as difficult as those confronting the mother in Shumaker. Furthermore, both the period of time in which the mother failed to visit with her child, and the period of time in which the mother failed to contact the state agency were longer in the present case. The latter time period was approximately a year longer, and ended only because contact was initiated by the state agency.
The other cases cited by appellant provide even less support for her position. The facts of State in Interest of Canady, 430 So.2d 265 (La.App. 5th Cir.1983) differ significantly from the present situation, since there the court found Mr. Canady had made repeated efforts to gain visitation rights with his children, but was thwarted at every step, while Mrs. Canady, although not contacting the state agency for a substantial period of time, had intended placement of her child to be temporary and was desperately trying to get her life in order so that she would be a suitable mother for her children. In the case of In Interest of Jackson, 312 So.2d 912 (La.App. 4th Cir. 1975), the father who lived in Georgia had not seen his son for nearly three years. However, the mother, who had custody of the boy, refused to let the son visit with the father in Georgia. The father also stated that he was intimidated by the mother's threats of arrest if he came to Louisiana, and that the mother would not even let him talk to the child on the telephone. Furthermore, the father did make support payments, although only in response to the mother's court actions for failure to support. Similarly distinguishable are the factual situations in the other two cases cited by appellant, In Re State in Interest of Fischbein, 194 So.2d 388 (La.App. 4th Cir. 1967) and In Re State ex rel. Sharpe, 219 So.2d 317 (La.App. 1st Cir.1969). In Fischbein, the mother manifested interest and concern, and made an effort within her means to support her children; in Sharpe the father failed to support or visit his children over a six-month period, but not a period exceeding two years as in the present case. Thus, all the cases cited by appellant are distinguishable on their facts and are not controlling in the case at hand.
Nevertheless, the cited cases as well as the other jurisprudence involving abandonment proceedings, indicate several factors useful in determining whether a parent has shown an intention to permanently avoid parental responsibility. In making such a determination the court should examine:
(1) The nature and extent of contacts between parent and child, including any mitigating circumstances;
(2) The frequency and amount of support payments, also considering any mitigating circumstances; and
(3) The extent to which a parent, who has relinquished custody, has pursued a course of action to regain custody, including any legal action or any cooperation with a state agency.
Of course, none of the three factors listed above, standing alone, is determinative of parental responsibility. A court must necessarily examine each case individually and make a determination based on the totality of the circumstances involved in that case. Nevertheless, in this case the extremely sparse contacts between parent and child, the lack of any monetary support by the mother when able to provide it, and the small amount of interest shown by the mother in forming or pursuing a plan for regaining custody are all factors which, *146 taken as a whole, indicate the mother's intent to permanently avoid parental responsibility. Although the mother has opposed the child's adoption, and has expressed a desire to someday regain the child's custody, parental responsibilities are not fulfilled by merely expressing concern or having good intentions.
Decree
For the reasons expressed above, the judgment of the juvenile court finding the child abandoned under LSA-R.S. 9:403 is affirmed.
Affirmed.