586 So.2d 692 (1991)
STATE of Louisiana, In the Interest of K.D. and T.F.
Nos. 23,168-JA, 23,169-JA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1991.
*693 Pringle & Herzog by John R. Herzog, Shreveport, for State of Louisiana, Dept. of Social Services.
Alex Rubenstein, Shreveport, for D.F. and G.F.
Joey Hendrix, Shreveport, for K.D. and T.F.
Before NORRIS, HIGHTOWER and STEWART, JJ.
STEWART, Judge.
The State of Louisiana, through the Department of Social Services (Department) brought action to have two minor children declared abandoned by their parents. The Juvenile Court of Caddo Parish adjudicated one of the children abandoned by her father but not by her mother. The father of the child adjudicated as abandoned by him did not appeal. The Department appeals the denial of judgment contending the juvenile court judge erred in finding that the Department did not prove by clear and convincing evidence that the children were abandoned by their mother. We affirm.

FACTS
T.F. and K.D., the minor children of D.F., were placed in the custody of the Department by order of the Juvenile Court of Caddo Parish on February 16, 1987. The children were placed in the Department's custody due to a harmful family situation wherein the father sexually abused K.D. and C.M.[1] In June 1987, the children were adjudicated as children "in need of care." Since that adjudication, T.F. and K.D. have remained in the Department's custody while residing with a family in foster care.
In the predispositional report, the psychologist recommended foster care because of the harmful effects on the children of the family situation. The plans submitted by the Department recommended regular visitation, family team conferences to review progress, and counseling for the children and the parents. The objective was the reunification of the children with D.F. and G.F. initially but G.F. was dropped from the plan.
From June 1987 to December 1988, D.F. cooperated with the Department and made regular visits with her children. During that time, the social worker's reports indicated that D.F. also made progress toward *694 reuniting with her children. However, D.F.'s last visit with her children prior to institution of this proceeding, was on December 22, 1988. There were other scheduled visits in 1989 but D.F. did not attend them.
In January 1989, D.F. sent a letter to the Department stating that due to car trouble, she would not be able to attend the scheduled meeting and that she would contact the Department at some time in the near future when her circumstances improved. D.F. made no contributions toward the children's support nor did she buy even token gifts for them. The Department attempted to contact D.F. by letter(s) to reschedule the missed appointments and the psychological evaluation but she did not reply to these letters. The only contact that the Department had with D.F. was a telephone call on May 22, 1989 which she made in response to a letter advising her that C.M. had run away.
The Department instituted an abandonment proceeding on May 18, 1989 pursuant to LSA-R.S. 9:403(A)(2) against G.F. as to his daughter T.F. and D.F. as to her daughters T.F. and K.D. D.F. did not visit the children until after the filing of the petition for abandonment. The trial court declared T.F. legally abandoned by her father but denied the petition for abandonment of K.D. and T.F. with respect to their mother, D.F. K.D.'s father was not a party to these proceedings and no request was made for a judgment for abandonment with respect to him.
In written reasons for judgment, the trial judge found that the Department failed to carry its burden of proving by clear and convincing evidence that D.F. intended to permanently avoid parental responsibility. The Department appeals the trial court judgment as to D.F.

Assignments of Error
By its two assignments of error the Department contests the trial court judgment. First, Appellant argues that the trial court was "manifestly erroneous" in not finding that the mother had abandoned the children. Second, appellant argues that the trial court erred in failing to recognize the LSA-R.S. 9:403(A)(2) presumption of intention to permanently avoid parental responsibility. We disagree.

Law Applicable to Abandonment of Parental Rights
LSA-R.S. 9:403 sets forth the standard of proof required to raise the presumption that a child has been abandoned:
A. (1) A child shall be considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove either:
(a) The child has been deserted for a period of at least four months by his parent or parents, the whereabouts of his parent or parents are unknown, the parent or parents have made no provision for the child's care and support and have shown an intention to avoid parental responsibility; or
(b) The parent or parents have failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility.

(2) The introduction of clear and convincing evidence which establishes the facts required by Subparagraphs (1)(a) or (1)(b) of this Subsection shall create a presumption that the parent or parents intended to permanently avoid parental responsibilities. The child shall be declared abandoned unless the parent or parents present evidence that rebuts the presumption. A parent adjudged to have abandoned his child under Subparagraphs (1)(a) or (1)(b) shall thereafter have no right to object to or oppose any proceeding to adopt that child.
(Emphasis added.) Due to the harsh consequences of declaring a child to be abandoned by his parents, the aforementioned statute is strictly construed. State, in the Interest of Foret, 398 So.2d 78 (La.App. 4th Cir.1981), writ denied, 401 So.2d 987 (La.1981).
A decree of abandonment may only be granted where the evidence clearly *695 manifests the parent(s) intention to permanently avoid their responsibilities toward the child with all reasonable doubts being resolved against such a decree. State in the Interest of Canady, 430 So.2d 265 (La. App. 5th Cir.1983). The burden is on the state to affirmatively prove that the parents have failed to provide support for the child for at least four months. Once this burden is met, a presumption that the parent intended to permanently evade their responsibilities as parents arises. Womack for Declaration of Abandonment, 411 So.2d 1237 (La.App. 3d Cir.1982). The parents may rebut this presumption by providing evidence to the contrary.
This statute's legislative history indicate that the present version of the statute which was last amended in 1980 imposes a somewhat lighter burden upon the state than was imposed by previous versions. This court stated in State, in the Interest of T.M., 440 So.2d 951 (La.App. 2d Cir. 1983):
We continue to adhere to the basic principle that a decree of abandonment which irrevocably breaks one of the closest and most fundamental relationships must be predicated upon evidence of circumstances clearly manifesting the parent's intention to permanently avoid parental responsibility.
Factors to be used in determining whether a parent has shown an intention to permanently avoid parental responsibility include the following:
(1) The nature and extent of contacts between parent and child, including any mitigating circumstances;
(2) The frequency and amount of support payments, also considering any mitigating circumstances; and
(3) The extent to which a parent, who had relinquished custody, has pursued a course of action to regain custody, including any legal action or any cooperation with a state agency.
State in the Interest of D.L., 457 So.2d 141 (La.App. 2d Cir.1984).
None of these factors, standing alone, is determinative of parental responsibility. A court must necessarily examine each case individually and make a determination based on the totality of the circumstances involved in that case. Id.

DISCUSSION
Proof by clear and convincing evidence requires more than "a preponderance of the evidence," the traditional measure of persuasion, but less than "beyond a reasonable doubt," the stringent criminal standard. Succession of Bartie, 472 So.2d 578 (La.1985); Succession of Lyons, 452 So.2d 1161 (La.1984). Proof by a preponderance requires that the evidence, taken as a whole, show that the fact sought to be proved is more probable than not. Prestenbach v. Sentry Ins. Co., 340 So.2d 1331 (La.1976). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976); Succession of Sanders, 485 So.2d 126 (La.App. 2d Cir.1986), writ denied, 487 So.2d 443 (La.1986).
In the instant case regarding the nature and extent of contacts between D.F. and the two children, the record reveals that D.F. visited her children regularly from June 1987 until September 1988. Between September and December 1988, D.F. moved approximately 60 miles away to Atlanta, Texas, and decreased her visits to only once per month in October, November, and December of 1988. D.F. did not contact her children with any regularity after their December 22, 1988 visit.
However, in January 1989, D.F. notified the Department that she was unable to attend a scheduled meeting because of car trouble and that she would contact them at a later date when her circumstances improved. D.F. did not contact the Department again until the Department sent her a letter to inform her that her older daughter, C.M. had run away. D.F. telephoned the social worker in response to the letter and left a message to express her concern about C.M.
*696 D.F. testified that she had not visited with the children since December 1988 because she could not afford to travel from Atlanta, Texas to Shreveport, Louisiana. D.F. further testified that, because she was continually unable to find employment in Texas, she became destitute. D.F. also testified that she received information about the children through communicating by letter with C.M. who lived with D.F.'s mother in Vivian, Louisiana. C.M.'s testimony confirmed that D.F. frequently expressed her love and concern for T.F. and C.D. when D.F. contacted her. C.M. testified that she visited D.F. in Atlanta, Texas in December 1988 and on occasions between January and March of 1989. C.M. told her each time that T.F. and K.D. were doing all right. Testimony revealed that while D.F. did not send any cards or letters back to the children by C.M., she did tell C.M. that she loved them and would try to do the best that she could, but she found it hard to explain to them what was going on because they were so young.
The record indicates that support payments were nonexistent. D.F. testified that the Department "never questioned her of such obligations" because they were aware of her financial situation. Also D.F. testified that when she was working, she would buy clothing and various things for the children.
Regarding D.F.'s course of action to regain custody of her children, the evidence shows that D.F. cooperated with the Department from June 1987 to December 1988. She also made progress reuniting with the children until she moved to Atlanta, Texas. At that point, her cooperation with the Department ceased.
D.F. acknowledged that after writing a letter in January 1989, she did not contact the Department or the foster parents with regard to the two minor children. D.F. testified that she knew where the children were at all times and that she had lost their phone number and address but did not worry about the children because she had a lot of faith in the foster parents who she believed were good people.
At the abandonment hearing, D.F. testified she was in a better position for her children to return to her as she had a suitable home and automobile which she purchased with money received from a small settlement. She further testified that she was still unable to find employment and was expecting another child but planned to apply for welfare and additional food stamps.
We find the instant case distinguishable from cases cited by the Department in which abandonment was found. In, State of Louisiana, in the Interest of D.L., 457 So.2d 141 (La.App. 2d Cir.1984), the mother had not seen her children for two and one-half years at the time of the abandonment proceedings. Over the preceding eight years, the mother averaged about one visit per year with the child. Also, the mother sent no birthday cards or Christmas presents. In that case, this court held that the evidence presented was sufficient to invoke the presumption that the mother intended to permanently evade her parental responsibility as parent; and affirmed the trial court judgment which granted the Department's petition for abandonment of the mother's parental rights.
Likewise, we distinguish the instant case from State of Louisiana, in the Interest of Moore, 474 So.2d 478 (La.App. 4th Cir. 1985), where the evidence established that the mother had few contacts with her child during a three-year period prior to the abandonment proceedings, support from the mother was nonexistent, and the mother had made no attempts to regain custody of her child. The mother also failed to establish a permanent residence and a permanent job and failed to cooperate with the Department in their attempts to assist her. On these findings, the court held the evidence was sufficient to raise the presumption that the mother intended to permanently evade her responsibility as parent.
In the instant case, the conduct of D.F. from June 1987 through December 1988, differs greatly from that of the mothers in the cases discussed above. D.F. continually expressed interest in reuniting with her two younger daughters, first with the *697 Department and then with her older daughter, C.M. The Department placed great weight on the fact that D.F. resumed living in Atlanta, Texas with G.F., who had abused her children. However, the trial judge apparently accepted D.F.'s explanation that she did so only for a short time when she was destitute and had no other support. The trial court likewise accepted C.M.'s testimony that during her visits between December 1988 and March 1989, G.F. was not living with her mother nor was there any sign of his belongings present in her apartment.
Based on this record, the trial court was not clearly wrong in concluding that the state failed to proved by clear and convincing evidence the requisite circumstances showing an intention to permanently avoid parental responsibility. Even assuming that the Department adduced enough evidence from which to give rise to the presumption provided for in LSA-R.S. 9:403(A)(3), the trial court implicitly found that the testimony of D.F. and C.M. rebutted the presumption. The court of appeal may not set aside a trial court's findings of fact absent manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). On this record, we cannot say that the factual determinations by the trial judge were manifestly erroneous or clearly wrong.

CONCLUSION
Accordingly, we affirm the trial court judgment rejecting the Department's claim for the abandonment of D.F.'s parental rights regarding T.F. and K.D.
AFFIRMED.
NOTES
[1] C.M., 16 years of age at the time of trial was not a part of these proceedings.