ARMSTRONG, Judge.
The State of Louisiana, through the Department of Social Services, instituted this action to have the minor child DLB de- *872 dared abandoned by his mother.[1] The Orleans Parish Juvenile Court rendered judgment in favor of the mother finding that the State did not present dear and convincing evidence of the mother’s intent to permanently avoid parental responsibility of the child. The State appeals. For the reasons that follow, we affirm.
DLB was born on December 5, 1989. The record reveals that DLB was first placed in the custody of the State by order of the juvenile court on October 16, 1990 because he had been treated at Children’s Hospital for various injuries and illnesses. Pursuant to an Informal Adjustment Agreement, the juvenile court returned DLB to his mother’s custody on November 27, 1990. DLB was placed back in the custody of the State by order of the court on or about March 12, 1991 when he suffered yet another serious injury. Subsequently DLB was adjudicated a child in need of care on May 19, 1991. The court found the mother was unable to properly care for the child at that time. Consequently, the juvenile court ordered that DLB remain in the care, custody and control of the State. The order also indicated the mother had agreed to visit the child regularly, to submit to psychological and psychiatric evaluations, to obtain better housing, to obtain employment or return to school, and to attend parenting classes. The juvenile court’s custody order stated that its objective for the family was reunification.
On September 13, 1991, the State filed this Abandonment action pursuant to LSA-R.S. 9:403[2] alleging that the mother failed to visit DLB from May 9, 1991 to September 13, 1991, a period of just over four months, and her actions demonstrated her lack of interest in pursuing a course of action to regain custody and to reassume parental responsibility. DLB was 21 months old at that time. LSA-R.S. 9:403, in effect at that time, provided in pertinent part:
A. (1) A child shall be considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove either:
(a) The child has been deserted for a period of at least four months by his parent or parents, the whereabouts of his parents are unknown, the parent or parents have made no provision for the child’s care and support and have shown an intention to avoid parental responsibility; or
(b) The parent or parents have failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility.
(2) The introduction of clear and convincing evidence which establishes the facts required by Subparagraphs (l)(a) or (l)(b) of this subsection shall create a presumption that the parent or parents intended to permanently avoid parental responsibilities. The child shall be declared abandoned unless the parent or parents present evidence that rebuts the presumption. A parent adjudged to have abandoned his child under Subparagraphs-(l)(a) or (l)(b) shall thereafter have no right to object to or oppose any proceeding to adopt that child.
After the abandonment hearing at which DLB’s case worker, Yvette Sam (“Sam”), and the mother were the only witnesses called to testify, the juvenile court denied the State’s petition for abandonment. In its written reasons for judgment, the juvenile court declared subsection (A)(1)(b) not applicable. Relevant to subsection *873 (A)(1)(a), the court indicated that the State’s case revolved around its proof of the mother’s intent to permanently avoid her parental responsibilities because the evidence presented did not show a request for support and the mother’s whereabouts were known. The court found the mother did not visit DLB for four months and did not attend parenting classes or a scheduled evaluation. It also found “constant battling between the mother and the [case] worker,” but did not indicate whether the mother’s failure to comply with the May 9, 1991 reunification plan was attributable to this battle. The court weighed the evidence and concluded that the mother’s action did not clearly and convincingly show her intention to permanently avoid her parental responsibility for DLB, and the evidence was insufficient to declare him abandoned.
On appeal the State contends that the juvenile court’s judgment was manifestly erroneous because it proved at trial by clear and convincing evidence that the mother abandoned the child. The State argues that the mother failed to visit the child for the minimum period set forth in LSA-R.S. 9:403. Specifically, the State contends that the mother failed to attend the scheduled weekly visitations at Everlasting Gospel of Jesus Christ Holiness Church on May 13, May 20, May 27, June 3, June 10 and June 17, 1991, and did not visit the child until September 27, 1991, when he attended the birthday party of one of his siblings. She did not visit him again before the trial. The State also contends that the mother failed to attend her psychiatric evaluation appointments and her parenting program meetings. Sam testified that she made numerous phone calls, sent letters and provided bus tokens in order to encourage and assist the mother in complying with the juvenile court’s May 9, 1991 order. Sam stated however, that her efforts were met with resistance, refusal and hostility. Based upon these facts, the State claims the child’s situation falls squarely under the definition of abandonment in LSA-R.S. 9:403.
The mother admits she did not visit DLB between May 9 and September 19, 1991. However, she asserts she was in constant contact with his case worker and/or the state office during that four month period and she did visit him on September 27, 1991. The mother contends that she found it most difficult to comply with the juvenile court’s May 9, 1991 order because she has four other children in her care who are under the age of ten and she has no means of private transportation to attend visitations, classes and/or evaluations. She claims the evidence manifests her intent to retain parental responsibility for DLB as it shows she attempted to leave clothing and toys for DLB (the State disallowed her actions) and inquired about his interests and well being. The mother urges that the totality of her circumstances support the juvenile court’s denial of the abandonment.
LSA-R.S. 9:403 requires the introduction of clear and convincing evidence establishing the facts required by its subsections (A)(1)(a) or (b). State in Interest of JML, 540 So.2d 1244 (La.App. 3d Cir.1989). The statute is strictly construed. State in Interest of K.D. and T.F., 586 So.2d 692 (La.App. 2d Cir.1991); State in Interest of Foret, 398 So.2d 78 (La.App. 4th Cir.1981), writs den., 401 So.2d 987, 1208 (La.1981). After the State sustains its burden of proving those factual elements, a presumption arises that the parent or parents intended to permanently avoid their parental responsibilities. State in Interest of K.D. and T.F., supra; State v. State in Interest of Moore, 474 So.2d 478 (La.App. 4th Cir.1985).
The court will enter a decree of abandonment only where the evidence clearly manifests the parent(s)’ intention to permanently avoid their responsibility toward the child with all reasonable doubts being resolved against such a decree. State in Interest of K.D. and T.F., supra. Factors it uses in determining whether a parent has shown an intention to permanently avoid parental responsibility for his or her child include:
*874 1. The nature and extent of contacts between parent and child, including any mitigating circumstances;
2. The frequency and amount of support payments, also considering any mitigating circumstances; and
3. The extent to which a parent, who had relinquished custody, has pursued a course of action to regain custody, including any legal action or any cooperation with a State agency.
State in Interest of D.L., 457 So.2d 141 (La.App. 2d Cir.1984); State in Interest of K.D. and T.F., supra; State v. State in Interest of Moore, supra. Each case must be individually examined because none of the above enumerated factors, standing alone, is determinative of parental responsibility. State in Interest of K.D. and T.F., supra. The court's abandonment determination is based on the totality of the circumstances involved in that case. Id.
In the instant case, from our review of the juvenile court’s judgment and reasons, it is unclear whether the court concluded that the State failed to prove a prima facie case of abandonment under LSA-R.S. 9:403(A)(1)(a) or (b), or whether it proved the prima facie case but it was rebutted. A decree of abandonment, irrevocably breaking one of the closest and most fundamental of human relationships, must be predicated upon evidence of circumstances clearly manifesting the parent’s intention to permanently avoid parental responsibility. State in Interest of T.M., 440 So.2d 951 (La.App. 2d Cir.1983), writ den., 443 So.2d 1120 (La.1984). Pre-termitting discussion of whether clear and convincing evidence of the other facts required by subsections (A)(1)(a) or (b) were met, our review of the record discloses that the juvenile court was not clearly wrong in finding the mother never intended to permanently avoid parental responsibility for the child.
First, with regard to the nature and extent of the contacts between parent and child, trial testimony shows the State visitation schedule was basically followed until, on Sam’s suggestion and over the mother’s objection, the State changed the visitation site from the mother’s home in the Desire Project to the Everlasting Gospel of Jesus Christ Holiness Church. To get to the church, the mother and her four children had to travel a fair distance by bus. The mother provided various excuses for her failure to attend the weekly and/or monthly scheduled visitations, including she was ill, she had to work, her children were ill and she arrived late for visits, finding Sam and DLB gone. She also indicated that visits were difficult because after her other children returned home from visiting DLB, they would be very unruly and complain that they missed their baby brother. The record shows that despite the mother’s lack of contact with the child, she did initiate contact and remained in continuous contact with the State during that period.
Second, with regard to the frequency and amount of support payments made by the mother, we note that failure, even the refusal, of a parent to support his or her child is not sufficient cause to justify a decree of abandonment unless it is shown by clear and convincing evidence that the parent manifested an intent to permanently avoid all parental responsibility. State in Interest of a Little Boy, 473 So.2d 858 (La.App. 4th Cir.1985); State in Interest of Foret, supra. In the court below, no evidence was presented regarding a request for support. Evidence did show, however, that the mother brought DLB a Saints T-shirt and a sailor cap but Sam would not accept the gifts on his behalf due to concern that they might get lost. Additional evidence showed that the mother receives approximately $550 to $600 a month from welfare for the support of herself and her other four children. It did not address her ability to provide support for DLB.
Third, with regard to the extent to which the mother has pursued a course of action to regain custody, evidence was introduced relative to the juvenile court’s May 9, 1990 order and the mother’s compliance/noncompliance with it. The order indicated that, to ensure reunification with DLB, the mother agreed to visit him regularly, submit to psychological evaluations, obtain better housing, obtain a job or return to *875 school, and attend parenting classes. As previously set forth, the mother failed to visit her son regularly. She also failed to appear at parenting classes even though Sam scheduled her to attend meetings at the YMCA.
Further, the mother failed to attend the psychological evaluations scheduled by Sam. Nevertheless, evidence showed that the mother attempted to comply with the court’s request for a psychological evaluation. Twice she went to the Desire Mental Health Clinic which is located near her home. The mother explained to the court that she went to the Desire Clinic instead of the evaluations scheduled by the State because she felt the State was trying to “entrap” or “bait” her. She resented Sam’s “bargaining” with her, i.e., that if she wanted to see DLB and/or get him back, she had to comply with the State’s demands. The juvenile court, however, never obtained an evaluation of the mother for its use in dispositional proceedings.
Evidence also revealed that the mother attempted to comply with the court’s requests that she find better housing for her family and that she obtain employment or return to school. Regarding her housing dilemma, the mother testified about her futile attempts to move her family out of the Desire Project. She stated that she filed documents with HANO and spoke with a staff attorney. She also stated that she complained in vain to HANO about needed repairs and the presence of rodents in her apartment. Regarding her employment, evidence revealed that while she did not obtain full-time employment, she temporarily worked out of her home for a company named Telephones until the company relocated to another city. Sam testified that the mother told her she had returned to school to get her GED.
Thus, applying the three prong “intent” test to the facts in the record, while the evidence does not show overwhelming interest on the mother’s part to fulfill the plan for reunification, it does show her interest in DLB, her animosity towards Sam and her resentment that she had to complete tasks in order to have her son returned to her. The strongest evidence presented by the State regarding the mother’s intent to avoid her parental responsibility for DLB was Sam’s testimony that the mother said she did not miss DLB and “DLB was a State’s baby, not hers.” The mother, however, testified that she did not make the former statement and stated that the latter statement was made in the context of a discussion over DLB’s medical bills when the State attempted to collect for the hospital bills accrued when DLB was hospitalized for his burns.
The principle in abandonment cases is that LSA-R.S. 9:403 is strictly construed and all reasonable doubt is resolved against declaring an abandonment. We cannot find that the juvenile court manifestly erred in finding the mother did not intend to permanently avoid her parental responsibilities. Absent an abuse of discretion by the juvenile court, its findings of fact will not be disturbed on appeal. State in Interest of Four Minor Children, 453 So.2d 1014 (La.App. 3d Cir.1984). The State may file another affidavit of abandonment if the mother demonstrates her intent to avoid parental responsibility of the child.
For the foregoing reasons, the judgment of the juvenile court is affirmed. All appeal costs are assessed to the appellant.
AFFIRMED.

. The affidavit of abandonment asserts that DLB’s father was incarcerated in the St. Bernard Parish Prison prior to May 1991 and was not eligible for parole until February 1992. The affidavit did not pray for an adjudication of abandonment as to the father and he was not made a party to these proceedings.

. LSA-R.S. 9:403 was repealed by Acts 1991, No. 235. The subject matter of (former) LSA-R.S. 9:403 is presently contained in Louisiana Children’s Code Art. 1015. The provisions of article 1015, however, are not identical to those of (former) LSA-R.S. 9:403.