GUIDRY, Judge.
Craig Manuel, father of the minor child, Seneca Jenee Manuel, appeals a judgment of the trial court terminating his parental rights and precluding him from participat *872 ing in the rearing of the child, Seneca Jen-ee Manuel. We affirm.
On April 6, 1992, John E. and Evelyn R. Broussard, the maternal grandparents of the minor child, Seneca Jenee Manuel, who had been granted custody of the child in a separate proceeding (No. 69544-B), filed a motion for leave to file a petition for termination of the parental rights of Craig Manuel. The motion was granted, the termination petition was filed forthwith and an attorney was appointed by the court to represent the child.
Yolanda Broussard, the daughter of John and Evelyn Broussard, married Craig Manuel in 1985. One child was born of the marriage, Seneca, on November 14, 1986. Six weeks after Seneca was born the couple separated until Seneca was approximately four and one-half months old, at which time they attempted a reconciliation which lasted approximately one month. When the reconciliation failed, Yolanda and Seneca moved in with her parents where they lived together until Yolanda was killed on December 9, 1989.
In September 1987, Yolanda filed a suit for separation from bed and board against Craig. Judgment was granted in her favor making her custodial parent of Seneca and ordering Craig to pay $400 per month child support. Craig failed to make any child support payments and, in January 1988, Yolanda filed a rule for past due child support payments and was given a judgment for arrearages in the amount of $1,650. When Craig still failed to meet his obligation, Yolanda had his wages garnished in July 1988.
The following month Yolanda filed suit for divorce. On October 6, 1988, judgment of divorce was rendered in Yolanda’s favor, granting her custody of Seneca, subject to reasonable visitation by Craig, and continuing Craig’s $400 per month child support obligation. By June 1989, Craig was over $4,000 in arrears on Seneca’s support payments and Yolanda once again had to file a rule for contempt. In that rule, she also sought modification of Craig’s visitation privileges.
We pick up from that point with the trial judge’s narration of events as set out in his reasons for judgment:
On July 11, 1989, Mr. Manuel sought to reduce the child support payments and have a joint custody plan between the parties. As a result of this litigation, a minute entry dated July 25, 1989 shows that a stipulation was entered into whereby the past-due arrearages of child support were made executory in the amount of $4,400; that the future child support was reduced to $75 a month; and the Court pretermitted the question of contempt and joint custody of the child to a later date.
In the criminal proceeding, State of Louisiana vs. Craig Anthony Manuel, No. 44,-086, a bill of information was filed on April 28, 1989 concerning criminal neglect of family to a child by the name of Brittney Polk. This child is the child of Craig Manuel but not the child of Yolanda Manuel. He also has another child by ... [the Polk] woman.
Then by Docket Number 69,655, in a suit entitled John E. Broussard and Evelyn Rochon Broussard vs. Craig Manuel, filed December 14, 1989, the petitioners sought the custody of their grandchild, Seneca Jenee Manuel, age 3, noting that the mother of the child, Yolanda Brous-sard, was the victim of a homicide on December 9, 1989, and that at the time of her death their daughter, Yolanda, had the custody of the minor child. The petitioners noted that Craig Manuel, the father of the child, was a suspect in the homicide [no charges have been filed against Craig in connection with Yolanda’s death] and they allege that he had a very violent temper and, in fact, had been arrested for violent actions in the past against Yolanda Manuel. No significant action was taken in this case other than that the temporary care, control and custody of the minor, Seneca Jenee Manuel, was granted jointly to John E. Broussard and Evelyn Rochon Brous-sard.
[[Image here]]
*873 ... [Since the date of Yolanda’s death], Craig Manuel has had no contact whatsoever with the child or with Mr. and Mrs. John Broussard. He has paid no child support, he has made no attempt to see the child, he has had no visitation rights nor has he sought any, he has not sent any gifts to the child or has had any contact whatsoever, and in fact the only effort that he has made to secure contact with the child has been through these proceedings herein when he requests that the Court deny the petition to terminate his parental rights.
It is quite obvious from the demeanor of Mr. and Mrs. Broussard and their testimony and the love and care that they have given their grandchild that it would be highly desirable that the child stay with them_ Mr. and Mrs. Broussard are the only parents that the child knows ... and they are raising her in a good manner and with love and affection. They admit that they still harbor the suspicion that the murder of their daughter was caused by Craig Manuel.
[[Image here]]
Manuel testifies [sic] that he was injured on August 16, 1989, and had back surgery in 1991, which is the reason that he could not pay the child support payments, and notes that he gets $420 a month in maintenance and cure.
Yolanda Broussard had previously charged him with harassment and the minutes of the City Court of New Iberia show that on October 4, 1989 he pleaded guilty to this charge, was sentenced to pay a $280 fine, and received a suspended sentence and was placed on probation on the condition that he would not contact, harass or bother Yolanda Brous-sard. The order also said that he could not contact her concerning visitation until he had a court order authorizing him to do so.
The evidence convinces this Court that Craig Manuel set out on a plan to deprive her of child support, and to deprive the mother or mothers of the other two children that he has of child support, and apparently was successful in doing this. He has hardly spent any time with the child Seneca at all, perhaps two months when the child was first born and one month during a temporary attempt at reconciliation in 1988. Since that time he has literally and figuratively abandoned the child, and this Court so holds.
This Court finds, under the Children’s Code, that the evidence has clearly shown this long period of abandonment, failure to pay child support, harassment against the child’s mother, and the neglect of the child, demonstrates to the Court conclusively that the parental rights of Craig Manuel should be terminated.
This Court is further convinced that the welfare of the child would be greatly damaged if any visitation rights were to occur between this child and her unseen father. Mr. and Mrs. Broussard have indicated a desire to adopt this child, hence the institution of these proceedings, and should the adoption occur it would certainly be in the best interest of the child that Mr. Manuel would be precluded from participating in the rearing of the child. He has not nurtured this child in the past, and he should not do it in the future.
Craig Manuel testified that he had made child support payments to Yolanda for Seneca, but that these payments were made in cash and he had no receipts for most of those payments. He, however, failed to produce even one receipt. Craig also testified that he had instructed his previous attorney to pursue the establishment of visitation rights with Seneca on his behalf. However, except for his request for joint custody (which was not pursued) filed on July 11, 1989 in response to Yolanda’s rule to make $4,400 in back due support executory, there is no proof of this allegation.
Although Craig insinuated that he was ordered to stay away from the Broussards and hence could not visit his daughter, upon being questioned specifically on this point, he admitted that neither Sheriff Romero of Iberia Parish nor the Brous-sards had ever issued such an order. In *874 fact, the Broussards, although not convinced of Craig’s innocence in the death of their daughter, had offered to let both Craig and his mother visit with Seneca in their home subject to the visit being monitored by a member of the law enforcement community. Neither party sought to take advantage of this offer.
The Louisiana Children’s Code, which became effective January 1, 1992, governs the disposition of this case. The grounds for the involuntary termination of parental rights are contained in La.Ch.C. art. 1015, which states in pertinent part:
The grounds set forth in the petition must meet all of the conditions of any one of the following Paragraphs:
[[Image here]]
(9) Abandonment of the child
(a) The child has been abandoned by his parent for a period of at least four months.
(b) The parent has failed to provide for the child’s care and support, without just cause, thus demonstrating an intention to permanently avoid parental responsibility-
(10) Failure to maintain contact with the child
(a) The child was voluntarily placed in the physical custody of some other individual or married couple.
(b) The parent has refused or failed to visit, communicate, or attempt to communicate with the child, without just cause, for a period of two years.
The degree of proof necessary to terminate a parent’s rights is quite high. La. Ch.C. art. 1035 states:
Where the petition alleges facts constituting criminal conduct under Article 1015(2) or grossly negligent behavior under Article 1015(3), such facts must be proven beyond a reasonable doubt. In the instances of all other grounds, the facts alleged must be proven by clear and convincing evidence. In all involuntary termination of parental rights proceedings the accused parent or parents shall be accorded due process of law.
The comments following La.Ch.C. art. 1035, in referring to the former abandonment statute, R.S. 9:403, note that while that statute set no evidentiary standard, Santosky v. Kramer, 102 S.Ct. 1388, 455 U.S. 745, 71 L.Ed.2d 599 (1982), requires proof by at least clear and convincing evidence. Santosky, however, at 1403, 455 U.S. at 769-770, goes on to state that in connection with the clear and convincing evidence standard, the “... determination of the precise burden equal to or greater than that standard is a matter of state law properly left to state legislatures and state courts”.
Appellant argues that petitioners in this case failed to meet the clear and convincing standard and that the trial judge erred in finding that they had done so. We disagree with appellant.
The clear and convincing standard was applied to cases filed under the now repealed La.R.S. 9:403. In State, In the Interest of K.D., 586 So.2d 692 (La.App. 2d Cir.1991), our brethren of the Second Circuit, with whom we agree, explained:
Factors to be used in determining whether a parent has shown an intention to permanently avoid parental responsibility include the following:
(1) The nature and extent of contacts between parent and child, including any mitigating circumstances;
(2) The frequency and amount of support payments, also considering any mitigating circumstances; and
(3) The extent to which a parent, who had relinquished custody, has pursued a course of action to regain custody, including any legal action or any cooperation with a state agency.
State in the Interest of D.L., 457 So.2d 141 (La.App. 2d Cir.1984).
None of these factors, standing alone, is determinative of parental responsibility. A court must necessarily examine each case individually and make a determination based on the totality of the circumstances involved in that case. Id.
[[Image here]]
Proof by clear and convincing evidence requires more than “a preponderance of *875 the evidence,” the traditional measure of persuasion, but less than “beyond a reasonable doubt,” the stringent criminal standard. Succession of Bartie, 472 So.2d 578 (La.1985); Succession of Lyons, 452 So.2d 1161 (La.1984). Proof by a preponderance requires that the evidence, taken as a whole, show that the fact sought to be proved is more probable than not. Prestenbach v. Sentry Ins. Co., 340 So.2d 1331 (La.1976). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976); Succession of Sanders, 485 So.2d 126 (La.App. 2d Cir.1986), writ denied, 487 So.2d 443 (La.1986).
And, in Womack For Declaration of Abandonment, 411 So.2d 1237 (La.App. 3rd Cir.1982), a panel of this court stated:
A child is considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove the parents have failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility. LSA-R.S. 9:403(A)(l)(b). The introduction of such evidence creates a presumption that the parents intended to permanently avoid parental responsibilities and the child will be declared abandoned unless the parent or parents present evidence that rebuts the presumption. LSA-R.S. 9:403(A)(2). All reasonable doubt should be resolved against entering a decree of abandonment, which is in derogation of the natural rights of the legitimate parents. State, in Interest of McGruder, 386 So.2d 155 (La.App. 3 Cir.1980). However, once the trial court decrees a child abandoned it may place the child in the custody of an agency, person or persons, or make any other disposition of the child which is in its best interest. LSA-R.S. 9:403(C).
From the evidence produced at trial, it is clear that Craig Manuel made no serious attempt to see his daughter between December 9, 1989, when Yolanda was killed, through July 8, 1992, the date of trial. Further, he neither called, wrote or sent any presents or offered her any support during that same period. The record contains no evidence that Craig took any legal action to regain custody of or obtain visitation rights with Seneca during that time.
We find the evidence, when taken as a whole, clearly and convincingly supports the trial judge’s conclusion that Craig Manuel’s actions and omissions unequivocally showed his intention to permanently avoid his parental responsibility. Hence, the trial judge did not err in terminating Craig’s parental rights. The termination of parental rights in itself precludes the participation by the party whose rights are terminated from participating in the rearing of his (her) child. See La. Ch.C. art. 1038.
Finally, appellant puts forth the tenuous argument that, since petitioners did not pray for custody in their petition, but only for termination of Craig’s parental rights, the trial court erred in granting the Broussards custody of Seneca. We find this argument to be totally without merit. The Broussards had custody by right of a prior court order. The proceedings herein did not question, seek to modify or, in any way, place that former award of custody at issue. Under the former statutes (La.R.S. 9:403(C)), once the court determined that a parent’s rights should be terminated, it was free to make any disposition which was in the child’s best interest. We find nothing in the new Children’s Code which would derogate from this rule.
For the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.