669 So.2d 1312 (1996)
STATE of Louisiana in the Interest of Z.D. and J.D.
No. 95-CA-1680.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1996.
*1313 Catherine L. La Fleur, Supervising Attorney, Tara L. Foto, Student Practitioner, Loyola Law Clinic, New Orleans, for appellant.
Frances M. Breyne, Department of Social Services, New Orleans, for appellees.
Before SCHOTT, C.J., and LOBRANO and JONES, JJ.
LOBRANO, Judge.
P.D., the biological mother of Z.D. and J.D., appeals the Juvenile Court judgment terminating her parental rights.[1] We reverse and set aside.
On July 14, 1994, a petition for termination of the parental rights of P.D. was filed by the State of Louisiana, Department of Social Services, Office of Community Services (OCS) pursuant to Louisiana Children's Code Articles 1015(5) and/or 1015(9). According to the petition, one of P.D.'s male children, Z.D., born November 4, 1985, came into the legal custody of the State of Louisiana on May 15, 1987, and the other male child, J.D., born July 18, 1989, came into the legal custody of the State of Louisiana on October 9, 1991. The petition also alleges that Z.D. and J.D. were adjudicated children in need of care by a juvenile court on November 24, 1987 and February 4, 1992, respectively.
P.D. was alleged to be an "unfit" parent within the meaning of Louisiana Children's Code article 1003(10) for the following reasons:
"More than one year has elapsed since the children were removed from their mother's custody. P.D. is unfit to retain parental control and there is no reasonable expectation of her reformation in the foreseeable future. The Department has made every reasonable effort to reunite the children with their mother to no avail, but now recommends that reunification would not be in the best interests of the children. AND/OR The children have been abandoned by her for a period of at least four (4) months. She has failed to provide for the children's support, without just cause, thus demonstrating an intention to permanently avoid parental responsibility."[2]
Following trial, the Juvenile Court rendered judgment terminating all parental rights and obligations of P.D. and the respective fathers of Z.D. and J.D. and granting continued custody of Z.D. and J.D. to the State of Louisiana Department of Social Services. The trial judge did not provide reasons for judgment and did not specify which subsection of article 1015 formed the basis for terminating of P.D.'s parental rights.
P.D. perfects this appeal and argues three assignments of error. We find merit in her first argument that the State failed to carry its burden under Ch.C. art. 1035 of proving by clear and convincing evidence the requirements of Children's Code article 1015(5) or (9).
The State's petition alleges the substance of subsections (5) and (9) of article 1015 as the basis for seeking termination of P.D.'s *1314 parental rights.[3] Those subsections specifically provide as follows:
(5) Prior adjudication as a child in need of care and removal from the parental home
(a) One year has elapsed since a child was removed from the parent's custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(c) The department has made every reasonable effort to reunite the child with his parents to no avail but now recommends that reunification would not be in the best interests of the child.
(9) Abandonment of the child
(a) The child has been abandoned by his parent for a period of at least four months.
(b) The parent has failed to provide for the child's care and support, without just cause, thus demonstrating an intention to permanently avoid parental responsibility.
The termination of parental rights is a severe and permanent action. A decision to terminate must be scrutinized very carefully. The burden of proof requires clear and convincing evidence that all of the conditions set forth under the pertinent subsection of article 1015 are proven. La.Ch.C. art. 1035; State in Interest of J.L., 93-352 (La. App. 3rd Cir. 5/18/94), 636 So.2d 1186. Because parental rights are a fundamental liberty, our legislature has "imposed statutorily strict procedural and evidentiary requirements which must be met before issuance of a judgment terminating parental rights." State in the Interest of J.L., supra at 1191. An appellate court's standard of reviewing a judgment terminating parental rights is whether or not the record reflects that the trial judge was clearly wrong. Id.
Mindful of its heightened burden of proof, and the underlying reasons therefore, we find that the State failed to prove, by clear and convincing evidence at least one of the requirements of both subsections (5) and (9).
Subpart (a) of article 1015(5) requires proof that more than one year has elapsed since the children were removed from P.D.'s custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual. In the petition filed against P.D., the State asserted that Z.D. was adjudicated a child in need of care on November 24, 1987 and that J.D. was adjudicated on February 4, 1992. These dates are reiterated by the State in its post trial memorandum, and its brief to this court. However, neither the petition nor the brief are evidence. The record does not include, and the State did not introduce into evidence, any certified court orders and/or judgments adjudicating either of these children to be in need of care.[4] Based on the record before us there is no evidence to satisfy the initial requirements of article 1015(5). Furthermore, the evidence is totally insufficient to prove any specific date when Z.D. and J.D. came into the state's custody.
The State argues, however, that P.D.'s own testimony was sufficient to establish that J.D. and Z.D. were in the custody of the State more than one year prior to the institution of these proceedings. We disagree. After reviewing P.D.'s testimony we conclude that, at *1315 best, it is confusing on this issue. When specifically asked when her children came into the state's custody, P.D. responded:
"I think it is in 1990It is in the early `90's, `96 or `95, something like that. No, I am sorry in the `80's. I am so confused, I am just nervous1989."
Further questioning of P.D. would seem to indicate a time frame of somewhere in the late 1980's. Her testimony, however, falls far short of satisfying a clear and convincing standard of proof to establish that Z.D. and J.D. were in the physical custody of the State, pursuant to a court adjudication of a child in need of care, for one year prior to the institution of the instant proceedings. J.D. was not born until July of 1989. Thus, with respect to him, the record is even less convincing on this issue.
In brief, the State also refers to case plan documents dated 1991 which it alleges proves that more than the one year time period elapsed. A review of those documents show that they mention Z.D., but not J.D. and include only a general statement that Z.D. is in the legal custody of the State. No dates or court orders are mentioned.
We are satisfied that the State has failed to prove by clear and convincing evidence the requirement of article 1015(5)(a). Although the parties agree, and it is undisputed, that Z.D. and J.D. are in the custody of the State, the evidence falls short of establishing the specific dates that the custody began and whether it was granted pursuant to an adjudication in child in need of care proceedings.
With respect to terminating parental rights under La.Ch.C. art. 1015(9), the State must initially prove by clear and convincing evidence that the child has been abandoned by the parent for a period of at least four months. The State's petition does not specify the specific four month period wherein P.D. allegedly abandoned Z.D. and J.D. As we previously observed, the record is unclear as to the specific dates when Z.D. and J.D. came into State custody. However, the evidence does show that certain visitation schedules were set up by P.D.'s OCS case managers. The State's evidence is focused on visitation dates missed by P.D., but does not establish the number of visits attended by her. Although we are satisfied that P.D. missed numerous visits, the record does not show that she failed to attend for any consecutive four month period. In fact, the evidence does not establish an accurate record of attendance or non-attendance.
One of P.D.'s case managers, Turner Brown, testified that during the time period of February 1991 to August 1991, P.D. attended only two of twenty-eight scheduled visits with her children. However, neither his testimony nor any exhibits establish the exact dates of these two visits other than that one was in June and the other in July. Without accurate information, there is no clear showing that there was four consecutive months where P.D. attended no visitations with Z.D. and J.D. We also note that, according to the State's own allegations, J.D. did not come into State custody until October 1991. Assuming that to be a correct date, then much of the evidence on the issue of abandonment is irrelevant as to J.D.
Furthermore, with respect to these documents that only mention Z.D., they do not establish with specificity which visitation dates were attended and which were missed by P.D.[5] An unsigned OCS report dated August 6, 1991 states that P.D. did not visit Z.D. at all during the preceding six month period. However this statement was contradicted by Brown, who admitted that P.D. attended two visitations during that period. Again, this report does not mention J.D.
Yvette Martin, P.D.'s case manager at the time of the hearing, testified that P.D.'s attendance at visitation sessions with Z.D. and J.D. was poor, but that she did attend some visitations, although only sporadically. The State's attorney asked Martin if there was a consecutive six month period during her tenure as P.D.'s case manager when P.D. missed all visitations with Z.D. and J.D. Martin *1316 responded negatively. However, Martin was never asked about a four month period. Martin detailed dates of missed visitations but did not detail dates of attended visitations. Because Martin said P.D. attended some visitations during her tenure as case manager, it is impossible for us to ascertain from the record if there was a four month period of non-visitation suggestive of an intent by P.D. to abandon both Z.D. and J.D. Even though P.D.'s visitation attendance record has been very poor at times, the State did not prove by clear and convincing evidence that P.D. abandoned Z.D. and J.D. for a period of four months.
In addition, each of the case managers who testified stated that P.D. periodically contacted them even when her visitation attendance was poor. We find that this contact is enough to negate any showing of an intent to permanently avoid parental responsibility as required under Art. 1015(9)(b). See, State in Interest of DLB, 612 So.2d 871 (La.App. 4th Cir.1993). A remark made by P.D. to Martin at one point that she might surrender her children was explained by P.D. at trial as having been made during a period of depression. P.D. retracted this statement at trial and claimed that she never intended to abandon her children.

CONCLUSION:
We find that the State has failed to prove by clear and convincing evidence at least one of the requirements of either subsection 5 or 9 of article 1015 and therefore reverse and set aside the judgment terminating P.D.'s parental rights. Our ruling, however, does not preclude subsequent proceedings by the State under the same or any other subsection of article 1015 if the situation warrants.
REVERSED AND SET ASIDE.
NOTES
[1] The parental rights of the biological fathers of Z.D. and J.D. were also terminated by the Juvenile Court judge but neither of these men appealed the judgment.
[2] We quote directly from the State's petition. Actually, the petition is alleging termination pursuant to Article 1015(5) and (9) of the Children's Code. "Unfit" in and of itself is not grounds for termination of parental rights. Proof of a parent's "unfitness" coupled with proof of other conditions set forth in article 1015 are necessary for a judgment of termination.
[3] The very first sentence of article 1015 requires that the "grounds set forth in the petition must meet all of the conditions of any one of the following Paragraphs." The State's petition, in the instant case, satisfies that initial requirement.
[4] Attached as exhibits to the State's brief to this court are court orders, presumably copies of judgments adjudicating J.D. and Z.D. as children in need of care. However, even though the State argues in brief that the entire juvenile records were "incorporated by reference at trial" there is no indication of any such reference on the record. Simply put, the juvenile records were not introduced in evidence.
[5] Those documents also refer to another sibling, but not J.D.