599 So.2d 911 (1992)
STATE of Louisiana in the Interest of N.B.
Nos. 91-CA-2463, 91-CA-2420.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1992.
*912 F. Clayton Latimer, New Orleans, for the State of La.
Frank A. Tessier, Lynn F. Ives, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for N.B.
Linda G. Johnson, Orleans Indigent Defender Program, New Orleans, for P.A.B.
Steven Scheckman, New Orleans, for Laraine & Philip Marchese, intervenors.
Before SCHOTT, C.J., and WARD, J., and ALVIN RUDY EASON, J. Pro Tem.
WARD, Judge.
The resolution of these consolidated cases turns on the determination of whether the "best interest of the child" predominates over the interest of the natural mother in proceedings which will determine custody and ultimately adoption of a minor. The State in this case is aligned with the natural mother and its interest also competes with the "best interest of the child" for superiority.
To expedite resolution of the issues, we have ordered consolidation of an appeal by the attorney appointed to represent the minor child with an application by the child's foster parents for supervisory writs. Both proceedings arise from the question of whether the mother of a two year old child can transfer her custody to her brother and sister-in-law who are living in North Carolina for the purpose of permitting them to adopt the child. The father's rights are not an issue in this litigation.
N.B., born May 23, 1989, came into the protective custody of the State Office of Community Services of Louisiana in August 1990, because her mother disappeared. The Agency placed her in a foster home on August 15, 1990. In November 1990, the Juvenile Court adjudicated N.B. to be a "child in need of care," and granted custody to the State agency. Following this, the Office of Community Services found a foster home for N.B. and she has resided there with her foster parents ever since. In January 1991, the State's District Attorney filed an Affidavit of Abandonment to commence proceedings to terminate her mother's parental rights and to make her available for permanent placement and adoption. However, shortly after this pleading was filed, N.B.'s mother contacted the agency to obtain custody of her daughter. N.B.'s mother and the State Office of Community Services worked together to create a plan to transfer custody of the child to her maternal uncle and aunt who live in North Carolina and who want to adopt her. The North Carolina Department of Social Services conducted a home study and approved the uncle and aunt as suitable parents for adoption. The Orleans Parish Juvenile Court approved the joint plan of the State and N.B.'s mother, and the State dismissed the pending Affidavit of Abandonment.
N.B.'s mother, now residing in North Carolina, immediately executed an Act of Surrender and Consent to Adoption. The Department of Social Services, which has legal custody of child although N.B. is living with foster parents, petitioned the court to terminate its legal custody and to *913 approve the North Carolina "Act of Surrender/Adoption".
To protect the minor child's interest, the Juvenile Court appointed counsel to represent her, and counsel opposed the plan of adoption. The foster parents sought to intervene. They also oppose the plan.
The Juvenile Court heard motions on October 17, 1991. During this hearing, the court did not allow the parties to present "best interest" evidence. On October 25, the court recognized the act of surrender, ordered the State to take the actions needed to transfer custody to the child's maternal uncle and aunt, and denied the foster parent's petition to intervene.
N.B.'s counsel has appealed, asking this court to reverse the Juvenile Court's decision which in effect modified its prior disposition by ending foster care and restoring custody of N.B. to her mother, all so that her mother could transfer N.B.'s custody to her brother and sister-in-law for the purpose of adoption. In the alternative, counsel asks this court to stay the Juvenile Court recognition of the North Carolina act and order a hearing to determine what is in the "best interest of the child" before the act of surrender is recognized in this state.
N.B.'s foster parents petitioned the court for the right to intervene, and they also contend that the joint plan of the State and mother would not be in the child's best interest. They seek supervisory writs to the Juvenile Court asking that this court reverse the Court's ruling denying their petition for intervention in this case. Foster parents provide living accommodations to foster children through a contract with the state. For a meager amount of money they provide a home, food, clothing and other necessities. Under the terms of the contract, foster parents can terminate the relationship with reasonable notice, and the State has the same prerogative. Also by the terms of the contract, the foster parents agree not to attempt adoption of the foster children. Nevertheless, foster parents and children often develop a parent-child "bonding", and in this case N.B.'s foster parents now wish to adopt N.B. They have a daughter of their own, and N.B. and their daughter are like sisters. They want to intervene for the purpose of provoking a hearing and presenting "best interest of the child" evidence in the Juvenile Court.
We affirm. The Juvenile Court did not abuse its discretion by denying the foster parents' petition for intervention, nor did it abuse its discretion by terminating State custody to permit N.B.'s mother to surrender her for adoption to her maternal uncle and aunt.
All the proffered testimony, and apparently all of the parties agree, that if a hearing were conducted the overwhelming evidence would show that it is in the best interest of the child to remain with her foster parents, and in all likelihood, to permit them to adopt her, in spite of the foster care contract. The foster parents argue that the juvenile court must consider the "best interest of the child" which they strenuously argue is an interest to be protected and one that is superior to all others. We disagree.
A natural mother cannot be deprived of parental rights except in extraordinary circumstances and then only through termination proceedings brought by the State, or the juvenile court, not by foster parents nor by the child through her attorney. LSA-R.S. 13:1601. The rights of parents in their natural child are afforded such protection that before a state can sever completely and irrevocably those rights the State must prove a case for termination by clear and convincing evidence. See Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388 (1982). C.J.P. Art. 87, Sec. 4F, shows the Code favors reunification of a child with a parent in "child in need of care" cases. The State's and natural parent's ultimate goal is to permanently place N.B. with relatives, a goal that conforms to public policy and Louisiana law. Because we find that the superior interest is the natural parent's interest in her child, what is in the best interest of the child is therefore not relevant in these proceedings. The Juvenile Court did not err by denying the intervention and by denying N.B.'s *914 counsel's offer of evidence as to what is in the "best interest of the child".
As further support for this holding, the Code of Juvenile Procedure does not require a hearing to determine the best interest of the child before the Juvenile Court modifies its prior disposition, changing it to return a child to a natural parent. These proceedings took place before the Louisiana Children's Code was effective; the Code of Juvenile Procedure is applicable. This means that after the juvenile court makes an adjudication that a child is in need of care the court has broad discretion in deciding the disposition (custody). C.J.P. Art. 85. After a disposition, the juvenile court judge may modify a judgment of disposition without a contradictory hearing when the conditions of the disposition are sought to be made less restrictive. C.J.P. Art. 91C. This easily translates to mean that a hearing is not required when the State decides to terminate the foster care relationship, and the juvenile court makes a determination that the child is no longer in need of care, returning her to the custody of the natural mother.
"Best interest" hearings in surrender and adoption disputes provide a child with a safeguard against being uprooted after permanent placement; they are not a vehicle to prevent the State from ending the foster care placement, which by definition is temporary. Here, the State as N.B.'s legal custodian, as well as N.B.'s mother, and the potential adoptive parents all agree that the surrender and adoption are desirable. The safeguards designed to protect N.B. from being uprooted after permanent placement do not come into play here because this surrender conforms to Louisiana's goals and policy of permanent placement of a child, preferably with relatives. Finally, a best interest hearing may be moot because the State has the discretion to place N.B. in any approved foster home, possibly even with her North Carolina relatives.
Although the Juvenile Court has the discretion to allow the foster parents to intervene as interested parties. LSA 46:2427 (repealed effective January 1, 1992); State in the interest of Jennifer W., 485 So.2d 504 (La.1986), not allowing the foster parents to intervene in this case is not a clear abuse of that discretion.
Counsel and foster parents argue that the mother's Act of Surrender/Consent to Adoption does not meet the formal requirements of LSA 9:422 et seq. and is invalid. While it is true that this document falls far short of Louisiana's requirements before a parent surrenders her child for adoption, the issue here is whether a Louisiana court should give full faith and credit to a document executed in North Carolina, by a North Carolina domiciliary, according to North Carolina law. N.B.'s mother's Act of Surrender/Consent to Adoption meets the requirements set forth by North Carolina's General Statutes, Chapter 48.
Although the new Louisiana Children's Code, effective January 1, 1992, is not applicable to this 1991 act of surrender, Article 1128 recognizes the surrender or consent to adoption executed by a nondomiciliary parent in accordance with the laws of the state of her domicile. The comment to this article acknowledges Louisiana's choice of law Civil Code Article 15 (reenacted in C.C. Arts. 3515 et seq., effective January 1, 1992) and the full faith and credit clause of the United States Constitution. Louisiana's Children Code is new, but Article 1128 simply codifies the law existing before 1992 and is an accurate statement of the law applicable to this case. The juvenile court's recognition of the out of state surrender fits solidly within a Louisiana child care scheme that favors cross-border cooperation, as evidenced by the Uniform Child Custody Jurisdiction Act and the Interstate Compact for the Placement of Children.
For these reasons, we hold that the juvenile court did not abuse its discretion when it modified its disposition nor did it err by recognizing the Surrender/Adoption Act.
AFFIRMED.
SCHOTT, Chief Judge, dissenting in part.
I agree with my colleagues that the foster parents have no standing in this case, *915 but I respectfully disagree with their conclusion that the child's best interest is not relevant in these proceedings.
My problem is that the state is not merely terminating its own custody in favor of the mother, but is also seeking approval of a surrender by the mother and adoption by her relatives. The immediate result of the judgment is the child's permanent custody by the adoptive parents. I understand that the North Carolina authorities have submitted a favorable report on these adoptive parents, but I believe this child through her court appointed attorneys has the right to question the North Carolina report and determine through discovery whether the adoption is in her best interest. I believe the attorneys have the duty to investigate in behalf of the child.
As long as the child is in Louisiana, the state owes a duty to protect the child's interest. This duty is delegated to the Juvenile Court. Before the state relinquishes the child to these folks in North Carolina, it should allow the child and her attorneys to question whether this action is in her best interest.