721 So.2d 1045 (1998)
STATE of Louisiana in the Interest of H.D. and C.D.
No. 98-CA-0953
Court of Appeal of Louisiana, Fourth Circuit.
November 4, 1998.
Frances M. Breyne, Office of Community Service, Bureau of General Counsel, New Orleans, Louisiana, for the Department of Social Services.
Before SCHOTT, C.J., and BYRNES and MURRAY, JJ.
BYRNES, Judge.
The State of Louisiana Department of Social Services, Office of Community Services (DSS/OCS) appeals a juvenile court judgment dated January 20, 1998, which denied the termination of parental rights. We reverse.
Two children are involved in this case. Christopher was born on July 11, 1990, and his brother Howard was born on July 10, 1995. Their biological mother is M.D. Christopher's biological father, A.R., is incarcerated. Howard's biological father is unknown.
According to the testimony of Ms. Nicole Bouie, the DSS/OCS case worker, on November 24, 1993 Christopher was adjudicated a *1046 child in need of care in Jefferson Parish because the biological mother, M.D., neglected Christopher by leaving him for long periods of time without anyone knowing her whereabouts.
On March 12, 1996, Christopher, who was five years old, was taken to the New Orleans Police Department as a lost child. When the Department of Social Services filed a petition to find Christopher as a child in need on April 11, 1996, his mother had not contacted the agency and had not reported the child as missing.
Howard had come into care on July 23, 1996 due to neglect and dependency. The biological mother, M.D., left her one-year-old son, with a man named Chris, and M.D. did not return. The man Chris brought the child Howard to M.D.'s mother, J.S., who could not keep the child.
On October 18, 1996, Christopher and his brother, Howard, were adjudicated children in need of care in Orleans Parish Juvenile Court Case No. 96-073-05-T-C-01. On December 2, 1996, the juvenile court approved a case plan for services for the safe return of Christopher and Howard to their mother. Under the terms of the plan, M.D. was to:
(1) have monthly contact with DSS/OCS;
(2) visit the children on a weekly basis as previously scheduled;
(3) maintain stable housing and employment;
(4) attend and complete parenting classes;
(5) submit to substance abuse testing; and
(6) enroll in an in-patient substance abuse treatment facility.
According to the case worker, M.D. attended scheduled visits with Christopher on May 15, 1996 and once in July 1996. M.D. had not attended any of her scheduled visits with Howard as of December 2, 1996.
Although at her request M.D. was given a referral letter to Grace House of New Orleans for in-house drug rehabilitation, she did not attend her appointment scheduled for October 22, 1996. She did not contact Grace House after her referral.
On November 15, 1996 M.D. was incarcerated with an arrest for crime against nature. When she was released on probation on December 30, 1996, M.D. did not contact DSS/ OCS. She was arrested again on January 24, 1997 for probation violations. She did not contact DSS/OCS when she was released on February 6, 1997. M.D. was rearrested on March 28, released on May 20, rearrested on June 4, and released at the end of October or the beginning of November 1997.
DSS/OCS received information that while Christopher and Howard were visiting their grandmother, M.D. took Christopher although by court order of February 25, 1997, M.D. was to have supervised visits with the children only in the OCS office.
M.D. testified that she went to a friend's house on Erato Street with Christopher in June 1997. M.D. was arrested while she was sitting on the front porch, and Christopher was upstairs in the home playing video games. Christopher was returned to DSS/ OCS in whose custody he has remained.
M.D. was incarcerated from June 1997 until December 16, 1997, when she was released on probation to Bridge House of New Orleans where she was to participate in an inhouse substance abuse program. The alternative to the program was for her to serve the five-year suspended sentence.
In the present case the termination trial was held on January 20, 1998. Under La. Ch.C. Art. 1015(4)(c), the juvenile court concluded that:
I think ridding oneself of crack cocaine is more than a "substantial indication"; it is a monumental indication to this Court that she is changed, she is reformed....
* * * * * *
... When somebody is coming back from a substance abuse, whatever that substance is, if that person does not have something to come back for, if all they see is the hopelessness and everything they love has been taken away from them by the State, or just by the course of human conduct, if they lose their job, their home, those they love, the road back becomes impossible. One must have something to come back for....
*1047 The trial court did not terminate parental rights. The State's appeal followed.
At issue is whether the trial court erred in finding that the State failed to prove that the parents' rights should be terminated by clear and convincing evidence pursuant to La. Ch.C. Art. 1015(5).
La. Ch.C. Art. 1015(5) provides:
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his needs for a stable and permanent home.
The State must prove the best interest of the child dictates termination of parental rights. State in Interest of Four Minor Children v. D.W., 585 So.2d 1222 (La. App. 2 Cir.1991). Termination of parental rights is a severe and permanent action which must be scrutinized very carefully. State in the Interest of Z.D., 95-1680 (La. App. 4 Cir. 2/15/96), 669 So.2d 1312. The State must prove a case for termination of the natural parents' rights by clear and convincing evidence. State in Interest of N.B., 599 So.2d 911 (La.App. 4 Cir.1992), writs granted, reversed on other grounds 605 So.2d 1134 (La.1992). The Department of Public Services need only fulfill requirements under one applicable provision of La. Ch.C. Art. 1015; factual findings in a parental termination proceeding are subject to the manifest error-clearly wrong standard. State in Interest of V.T., 609 So.2d 1105 (La.App. 2 Cir.1992), writ denied 614 So.2d 1269 (La. 1993).
La.Ch.C. Art. 1036(C), (D), and (E) state:
C. Under Article 1015(5), lack of parental compliance with a case plan may be evidence by one or more of the following:
(1) The parent's failure to attend court-ordered approved scheduled visitation with the child.
(2) The parent's failure to communicate with the child.
(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
(4) The parent's failure to contribute to the cost of the child's foster care, if ordered to do so by the court when approving the case plan.
(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based on expert opinion or based upon an established pattern of behavior.
E. Under Article 1015(6), a sentence of at least five years of imprisonment raises a presumption of the parent's inability to *1048 care for the child for an extended period of time, although the incarceration of a parent shall not in and of itself be sufficient to deprive a parent of his parental rights. [Emphasis added.]
In State in the Interest of C.D., 558 So.2d 806 (La.App. 5 Cir.1990), the appellate court found that termination of parental rights was in the best interest of the child, noting that adults can take years to improve their functioning but children are not granted the same amount of time. Children's lives are significantly disrupted while their parents are attempting to deal with their own problems.
Reformation sufficient to prevent termination of parental rights requires that a parent demonstrate substantial change, such as significantly altering or modifying that behavior which served as a basis for, and resulted in, the State's removal of the child from the parent's home. State in the Interest of D.T. v. K.T., 29,796 (La.App. 2 Cir. 6/18/97), 697 So.2d 665.
In State in the Interest of N.T., 560 So.2d 63 (La.App. 5 Cir.1990), the appellate court held that even if it is theoretically possible for the parent to be reformed, the expectation is not reasonable if it requires lengthy therapy or extended, intensive monitoring or supervision.
In State in the Interest of G.A., 94 2227 (La.App. 1 Cir. 7/27/95), 664 So.2d 106, the court found an absence of reasonable expectation of reformation in light of the continuous unwillingness of the mother to cooperate with the State and obtain substance abuse treatment, drug screenings, and counseling during periods of non-incarceration, which supported a termination of parental rights by clear and convincing evidence.
In State in the Interest of Latoya W., 97-0695 (La.App. 4 Cir. 2/4/98), 706 So.2d 688, the mother was unfit to retain parental control and provided no basis for reasonable expectation of reformation in the foreseeable future. This supported termination of parental rights because she was unable to stop her crack cocaine habit despite various drug treatment programs, she worked as a prostitute, stole children's toys, and had no source of income or place to live.
In the present case the juvenile court found a substantial indication that M.D. had changed because she planned to go to Bridge House for drug rehabilitation. However, entering Bridge House would be a way for M.D. to gain probation and avoid imprisonment.[1] The juvenile court emphasized that M.D. must have something to come back for, i.e. her children, to have an incentive to overcome her drug addiction. However, the best interests of the children take priority over the mother's interest.
In the past M.D. was unable to stop her drug habit. She has not shown adequate attempts to visit her children or to care for the immediate and continuing physical or emotional needs of the children for extended periods of time. M.D. is unable or unwilling to provide an adequate permanent home for the children based on her established pattern of behavior. She has been incarcerated repeatedly. There is no reasonable expectation of M.D.'s reformation or at least significant progress toward M.D.'s assumption of responsibility for the children in the foreseeable future. We find no substantial change which would significantly alter or modify M.D.'s behavior without lengthy therapy or extended monitoring or supervision. The State provided clear and convincing evidence that M.D.'s parental rights should be terminated. The juvenile court was clearly wrong in failing to terminate M.D.'s parental rights.
*1049 Accordingly, the judgment of the trial court is reversed, and the State's petition for termination of parental rights is granted. The case is remanded for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] The appellate court cannot consider evidence that is not part of the appeal record; the appellate court cannot consider attachments to appellate briefs which were not in the record. La. C.C.P. art. 2164; Lewis v. Texaco Exploration and Production Co., Inc., 96 1458 (La.App. 1 Cir. 7/30/97), 698 So.2d 1001. This court cannot consider the April 24, 1998 letter from Bridge House which stated that M.D. was discharged, her probation officer was notified to return her to jail, M.D. did nothing toward her recovery, and M.D. did not follow the rules and regulations of Bridge House. This letter, which was attached to the State's appellate brief, was written after the termination of parental rights trial on January 20, 1998. It was not introduced into evidence, was not before the juvenile court during the termination trial, and is not part of the record on appeal.