STATE OF LOUISIANA IN     *     NO. 2021-CA-0353
THE INTEREST OF C.M., C.M.,
H.M., P.M., AND J.M.     *

                            **COURT OF APPEAL**

               *

                            **FOURTH CIRCUIT**

               *

                            **STATE OF LOUISIANA**

                   * * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 24-119-J, DIVISION "DIVISION D"
Honorable Darren M Roy,
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins, Judge Paula A. Brown)

**JENKINS, J., CONCURS IN THE RESULT**

Jane Hogan
310 North Cherry Street
Hammond, LA 70401

      COUNSEL FOR APPELLANTS/P.S. AND C.M.


Katherine M. Dowling
State of Louisiana, Dept. of Children and Family Services
1450 Poydras St., Suite 1600
New Orleans, LA 70112

      COUNSEL FOR APPELLEE/STATE OF LOUISIANA

                                          **AFFIRMED**
                                     **August 4, 2021**

*JCL*
*PAB*

This matter involves the involuntary termination of parental rights. The State of Louisiana through the Department of Children and Family Services ("DCFS") filed a petition for the termination of parental rights of the mother, P.S. ("Mother"), and father, C.M. ("Father") (together, "Parents") as to their minor child, J.M.[1] After a hearing, the juvenile court determined that DCFS proved by clear and convincing evidence the statutory grounds for termination and that termination of Parents' parental rights was in the best interests of J.M. Parents now appeal the juvenile court's judgment terminating their parental rights. For the reasons that follow, we find no manifest error in the juvenile court's judgment, and we affirm.

On July 27, 2019, DCFS received a report alleging neglect, inadequate shelter, and inadequate food. Following the initial report, DCFS received additional information on August 1, 2019 concerning allegations of physical abuse and sexual abuse. The report alleged that Father physically assaulted the children. It was also reported that the youngest child, J.M., who was six years old, disclosed that he was sexually abused by his nine-year-old brother, P.M., every night at bedtime.

---

[1] We use the initials of the minor child and the parent to protect the minor's identity and ensure the parties' privacy. *See* Uniform Rules - Courts of Appeal, Rule 5-2.

During the investigation, the Child Protection Services ("CPS") worker observed the children sleeping in the home with no air conditioning. The living conditions of the home were deplorable and unsafe for the children. There were dog feces and food everywhere throughout the home, and the home smelled of urine. There was no food in the home for the children to eat. Parents stated the air conditioning had been inoperable for over a month and they had been living in the camper on the side of the home while the children were sleeping in the house with no air conditioning. During medical clearance, the doctor observed a bruise on P.M.'s buttocks. The CPS worker addressed the sexual abuse allegation with P.M. P.M. confirmed the sexual abuse perpetrated on J.M. and stated Parents were aware of the abuse but did nothing about it. Based on the information gathered in the course of the investigation, DCFS filed a request with the juvenile court for an instanter order, which was granted on August 2, 2019, placing J.M. in the temporary custody of DCFS.[2]

On August 20, 2019, DCFS filed a petition to have J.M. declared a child in need of care.[3] On October 23, 2019, the juvenile court held an adjudication hearing on the petition. Based on the stipulation of all parties, the juvenile court rendered judgment adjudicating J.M. a child in need of care and ordering that J.M. remain in the custody of DCFS pending further orders of the court under the specified terms and conditions set forth in an approved case plan. In addition, the juvenile court approved a case plan for Parents to regain custody of J.M. and advised Parents of

---

[2] Parents' four older minor children, C.M., C.M., H.M., and P.M., were also placed in the temporary custody of DCFS.
[3] The petition further sought to have the other minor children to be declared children in need of care.

the case plan, case review, and permanency review procedures and compliance requirements.[4]

On October 31, 2019, visitation between Parents and J.M. was suspended due to J.M.'s psychological state. DCFS and Tulane Parenting Education Program determined that it was in the best interests of the child to suspend visitation until J.M. demonstrated progress in his trauma treatment.

On August 26, 2020, the juvenile court held a case review hearing. After consideration of the case letter and attached case plan submitted by the State, the juvenile court rendered judgment approving the permanent case plan of adoption recommended by DCFS as being in the child's best interests.

On November 6, 2020, DCFS filed a petition to terminate Parents' parental rights to J.M. and to declare J.M. eligible for adoption specifying two grounds for termination: (1) abandonment pursuant to La. Ch.C. art. 1015(5) and (2) failure to comply with the case plan pursuant to La. Ch.C. art. 1015(6). With regard to abandonment, DCFS alleged Parents abandoned J.M. by leaving the child under circumstances demonstrating an intention to permanently avoid parental responsibility by failing to provide significant contributions to the child's care and support for a period of six consecutive months. With regard to the ground of failing to comply with the case plan, DCFS alleged the following particulars to support termination of Parents' parental rights:

1) Parents have failed to contribute to the court ordered costs of the child's foster care;[5]

---

[4] Further based on the stipulation of the parties, but over the objection of DCFS, the other four children were not adjudicated in need of care, and the court ordered that these children be returned to Parents and remain under the supervision of DCFS.

[5] The juvenile court found that Parents failed to comply with the case plan on grounds other than the alleged failure to contribute to the costs of P.M.'s foster care. We therefore express no opinion as to whether the record supports this allegation of non-support.

2) Parents have not maintained a safe, clean home;

3) Parents have repeatedly failed to comply with the required program of treatment and rehabilitation services;

4) Parents' visitation with the child has been suspended, but they failed to actively participate in services in order to have visitation reinstated;

5) Parents submitted to a psychological evaluation, but failed to follow the recommendations;

6) Parents failed to attend and complete parenting and anger management treatment with Tulane Parenting Education Program ("T-PEP");

7) Parents failed to seek mental health and OCDD services;

8) Parents lack substantial improvement in redressing the problems preventing reunification;

9) The conditions that led to the removal or similar potentially harmful conditions persist.

DCFS further alleged that, despite attempts at intervention, there was no reasonable expectation of significant improvement in Parents' conduct in the near future, considering J.M.'s age and need for a stable and permanent home.

On April 21, 2021, the juvenile court held a hearing on the termination of parental rights. After considering the evidence and testimony presented, the court rendered judgment terminating the parental rights of Parents to J.M. and declaring J.M. free and eligible for adoption. A written judgment was signed on May 27, 2021.

Parents now appeal the juvenile court's May 27, 2021 judgment terminating Parents' parental rights.

## LAW AND DISCUSSION

It is well-settled that a trial court's findings on factually-intense termination of parental rights issues -- including a parent's compliance with the case plan, a parent's expected success at rehabilitation, the expected significant improvement in the parent's condition or

5

conduct, and whether termination is in the children's best interests -- are reviewed on appeal under a manifest error standard of review.

*State in Interest of T.M.P.*, 13-1006, p. 21 (La. App. 4 Cir. 10/23/13), 126 So.3d 741, 753-54 (citations omitted).

In a termination proceeding, "[t]he petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence." La. Ch.C. art. 1035(A). In addition, the trial judge must also find that termination of the parent's rights is in the best interest of the child. *State in Interest of C.E.K.*, 17-0409, p. 14 (La. App. 4 Cir. 12/21/17), 234 So.3d 1059, 1068 (citations omitted).

The Louisiana Supreme Court has expressed its "unique concerns" regarding termination of parental rights as follows:

> In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing those interest, the courts of this state have consistently found *the interest of the child to be paramount over that of the parent.*

*State ex rel. H.A.S.*, 10-1529, pp. 11-12 (La. 11/30/10), 52 So.3d 852, 859 (emphasis added). The guiding principle that the child's interest is paramount is reflected in the Louisiana's Children's Code. For instance, Children's Code article 1004.1 provides:

> The department *shall file* and pursue to judgment in the trial court a petition to terminate the parental rights of the parent or parents if the child has been in state custody for seventeen of the last twenty-two

months, unless the department has documented in the case plan a compelling reason why filing is not in the best interest of the child.

La. Ch.C. art. 1004.1 (emphasis added). At the time of the termination hearing, J.M. had been in foster care for twenty months.

DCFS alleged grounds for the termination of Parents' parental rights under La. Ch.C. art. 1015(5) and (6), which provide in pertinent part as follows:

(5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

\* \* \*

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

\* \* \*

(6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

In the first assignment of error, Parents argue that the juvenile court erred in determining that DCFS satisfied its burden of proving by clear and convincing evidence the elements of the grounds for termination under La. Ch.C. art. 1015(6), as alleged in the petition. Specifically, Parents assert that DCFS failed to prove that Parents had not substantially complied with their case plan and that there was no reasonable expectation of significant improvement in the Parents' conduct in the near future. Based on our review of the record, we find no manifest error in the juvenile court's determination that DCFS established the statutory grounds for termination under La. Ch.C. art. 1015(6) by clear and convincing evidence.

7

Lack of parental compliance with a case plan may be evidenced by one or more of the following, under La. Ch.C. art. 1036(C), pertaining to proof of parental misconduct:

> (1) The parent's failure to attend court-approved scheduled visitations with the child.
>
> (2) The parent's failure to communicate with the child.
>
> (3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
>
> (4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
>
> (5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
>
> (6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
>
> (7) The persistence of conditions that led to removal or similar potentially harmful conditions.
>
> (8)(a) The parent's failure to provide a negative test result for all synthetic or other controlled dangerous substances, except for any drug for which the parent has lawfully received a prescription, at the completion of a reasonable case plan.
>
> (b) For purposes of this Article, "controlled dangerous substance" shall have the meaning ascribed in R.S. 40:961.

The State is only required to establish one of these statutory grounds. *State in Interest of M.L.*, 95-0045, p. 4 (La. 9/5/95), 660 So.2d 830, 832.

Our review of the record reflects that following a hearing on October 23, 2019, the juvenile court adjudicated J.M. a child in need of care and approved a case plan developed by DCFS for Parents to regain custody of J.M. The case plan

8

required, *inter alia*, Parents to attend parenting education classes with T-PEP, complete a psychological evaluation with Dr. Christine Powanda and follow all treatment recommendations, maintain safe and adequate housing free of safety hazards, demonstrate that the home was clean at all times, and make themselves available for announced and unannounced home visits.[6] Parents were warned by the juvenile court that failure to complete the case plan could result in termination of their parental rights.

At the termination hearing on April 21, 2021, Katina Price, the case manager supervisor, and Dr. Charles Zeanah, director of T-PEP, provided testimony supporting the grounds alleged for termination. Regarding the terms of the case plan, Ms. Price testified that Parents failed to complete the T-PEP parenting education program. Ms. Price stated that Parents did not maintain safe and stable housing at all times. The case worker reported difficulties in gaining access to the interior of the home during unannounced visits. On those occasions where the case worker gained entry into the home, he observed trash, clothing, food, and dirty dishes on the floor and dirty dishes in the bathroom sink and detected the strong stench of dog urine throughout the house. Ms. Price stated that Parents did complete psychological evaluations by Dr. Powanda but failed to follow Dr. Powanda's recommendations that they obtain mental health treatment through the Metropolitan Human Service District and apply for Office of Citizens with Developmental Disabilities ("OCDD") services.

---

[6] The case plan is not in the record. The terms and conditions of the case plan were established through the testimony of Katina Price, the DCFS case manager supervisor, at the termination hearing and are reflected in the DCFS report to the court dated October 15, 2019 and the T-PEP progress report for the period of August 20, 2019 - October 15, 2019.

Dr. Zeanah, a psychiatrist and an expert in child psychology and infant mental health, testified that Parents failed to complete the parenting education program offered through T-PEP. Parents attended less than half of the sessions they had scheduled. Parents attended every session of the introductory, six-week parenting group sessions and actively participated in these sessions. However, their attendance in the program thereafter tapered significantly. When they did attend sessions, Parents stated that they had no problems with parenting and did not need parenting services and failed to actively participate.

Dr. Zeanah stated that Parents failed to take J.M.'s allegations of abuse seriously. Parents denied abuse had occurred and did not question why J.M. would make allegations of abuse if the alleged abuse, in fact, did not occur. Dr. Zeanah would not expect a six-year-old child who had not been sexually abused to have any knowledge of the nature of sexual abuse alleged by J.M. In Dr. Zeanah's opinion, parents who do not believe their child's claims of abuse are not likely to protect the child from being abused in the future. Dr. Zeanah does not believe Parents have the parenting skills to protect J.M. and provide him a safe environment.

Reformation sufficient to prevent termination of parental rights requires that the parent demonstrate substantial change, such as significantly altering or modifying the behavior that resulted in the State's removal of the child from the parent's home. *State in Interest of H.D.*, 98-0953, pp. 6-7 (La. App. 4 Cir. 11/4/98), 721 So.2d 1045, 1048 (citation omitted). A reasonable expectation of reformation or significant improvement in the near future exists if the parent has cooperated with State officials and has shown improvement, although all of the problems have not been eliminated. *State in Interest of S.M.*, 98-0922, p. 10 (La.

10/20/98), 719 So.2d 445, 450 (citation omitted). In Dr. Zeanah's opinion, Parents have not made significant progress in being able to safely parent J.M., and it is highly unlikely they will rehabilitate in the near future, if ever.

Despite the fact that Parents assert that they want a continued relationship with J.M., they have not demonstrated that they have the ability to safely care for him. After thorough review and consideration of the record before us, as well as the applicable jurisprudence, we agree with the juvenile judge that Parents did not substantially comply with their case plan and there is no reasonable expectation of significant improvement in the near future. Accordingly, the juvenile judge did not err in finding that the State proved the ground for termination of parental rights set forth in La. Ch.C. art. 1015(6) by clear and convincing evidence.

Parents argue DCFS failed to make reasonable efforts to assist them to reunite with J.M., as required by *State ex rel. A.T.*, 06-0501 (La. 7/6/06), 936 So. 2d 79.[7] "Reasonable efforts" are defined as "the exercise of ordinary diligence and care by department caseworkers and supervisors and shall assume the availability of a reasonable program of services to children and their families." La. Ch.C. art. 603(25).

The record supports a finding that DCFS undertook reasonable efforts to assist Parents with reunification. For instance, DCFS referred Parents to services aimed to assist them in learning how to maintain a clean home. After utilizing these services, the cleanliness of their home improved, and their four older children were returned to them. DCFS also referred Parents to parenting education classes,

---

[7] In *A.T.*, the Office of Community Services (now DCFS) made no effort to assist the mother in obtaining housing even though lack of suitable housing was the major obstacle to reunification. The Supreme Court held that the Office of Community Services had an obligation to make reasonable efforts to assist a parent in finding suitable housing before it could seek to terminate parental rights under La. Ch.C. art. 1015(5) (now art. 1015(6)). *A.T.*, 06-0501, p. 1, 936 So.2d at 80.

as well as provided them a referral to address their mental health concerns. However, Parents failed to take full advantage of these services.

Parents assert that DCFS's suspension of their visitation with J.M. "created an insurmountable impediment to reunification and proves that DCFS did not make reasonable efforts to help [Parents] achieve reunification." Parents offer no explanation as to how their inability to visit J.M. served as an impediment to reunification.

Visitation was suspended on October 31, 2019 based on Dr. Zeanah's recommendation that it was in the best interest and well-being of the child to suspend visitation until J.M. demonstrated progress in his trauma treatment. The suspension of visitation and the reason for suspending visitation was brought to the juvenile court's attention at the next review hearing conducted on December 11, 2019. At the February 5, 2020 review hearing, Parents requested visitation, but their request was denied. The juvenile court repeatedly found DCFS made reasonable efforts towards the case plan goal of reunification throughout the underlying child in need of care proceedings until the case plan goal was changed to adoption on August 26, 2020.

In the third assignment of error,[8] Parents argue that the juvenile court erred in failing to determine that termination of Parents' parental rights was in J.M.'s best interest. Contrary to this assignment of error, the Judgment of Termination of Parental Rights signed by the juvenile judge reflects that the court found that "termination of parental rights is in the best interest of [J.M.]."

---

[8] The second assignment of error is addressed below.

La. C.C. art. 134(A) provides factors to be considered by the trial court when determining a child's best interest. These non-exclusive factors include the following:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

* * *

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

* * *

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

Dr. Zeanah testified that Parents lack the parenting skills to protect J.M. from abuse and provide a safe environment and that J.M. should remain with his foster parents. He further testified that J.M.'s behavioral problems have significantly improved during the time he has been in foster care, and he attributes J.M.'s improvement to the foster parents. The Court Appointed Special Advocate ("CASA") volunteer testified that J.M. has been "thriving" during his placement with his foster parents. She has observed a bond between J.M. and his foster parents and believes that the foster parents have the capacity to provide a safe and stable permanent home for him. Furthermore, the evidence is undisputed that J.M. does not wish to return to the custody of Parents but would rather remain in the custody of his foster parents. We cannot say that the juvenile court's determination of the best interests of the child is manifestly erroneous.

In the second assignment of error, Parents argue that the juvenile court erred in determining that DCFS satisfied its burden of proving by clear and convincing evidence the elements of the grounds for termination under La. Ch.C. art. 1015(5),

namely, that Parents abandoned J.M. by leaving the child under circumstances demonstrating an intention to permanently avoid parental responsibility by failing to provide significant contributions to the child's care and support for a period of six consecutive months. Having found that DCFS satisfied its burden of proving by clear and convincing evidence the elements of the grounds for termination under La. Ch.C. art. 1015(6), we need not address the alternate basis for termination of parental rights by abandonment under La. Ch.C. art. 1015(5).

For the foregoing reasons, we find no manifest error in the juvenile court's May 27, 2021 judgment terminating the parental rights of Parents and declaring J.M. eligible for adoption; and we affirm.

**AFFIRMED.**